**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a corporation, Plaintiff,**

v.

**FURNITURE FORWARDERS OF ST. LOUIS, INC., Chromcraft, Inc., and Alsco, Inc., Defendants.**

No. 66 C 325(2).

United States District Court
E. D. Missouri, E. D.

July 26, 1967.

Coburn, Croft & Kohn, St. Louis, Mo., for plaintiff.

Lon Hocker and Ed. K. Fehlig, St. Louis, Mo., for defendants.

## MEMORANDUM

MEREDITH, District Judge.

This case has been submitted to the Court on Stipulation of Facts and briefs of the parties without oral argument. Plaintiff, Chicago, Rock Island and Pacific Railroad Company is suing defendants Furniture Forwarders of St. Louis, Inc., Chromcraft, Inc., and Alsco, Inc., to recover demurrage charges claimed on certain shipments of goods from Memphis, Tennessee, and St. Louis, Missouri. The demurrage charges arose under the tariff provisions of 49 U.S.C. § 1, et seq., and the Court has jurisdiction under 28 U.S.C. § 1337.

The parties have stipulated that exhibits "B" and "C" correctly show the

number of days that the freight cars were held by the carrier and that, if plaintiff is entitled to charge demurrage on these cars, as it claims, the amounts plaintiff claims are due as set forth in Counts I and II of plaintiff's amended complaint are correctly computed.

The central issue is whether plaintiff has a right to hold certain cars and charge demurrage thereon. The disputed demurrage charges are charges made by the carrier for detaining freight cars until the cars could be consolidated into a "battery" on which the shipper could obtain the "battery rate". The "battery rate" is permitted under Items 145 and 180 of TCFB Tariffs 1-M, 1-N, and 1-O when two or more carloads are sent together, and is highly desirable because it is considerably lower than the per-carload rate, even when there are demurrage charges of the amount involved in this case. It was defendants' practice when they wished to take advantage of this battery rate, to inform the carrier that they would have several cars, which would be given to the carrier over a period of several days, but all of which would be shipped to the same destination under the same bill of lading. Defendants insist that under National Car Service Order 975 [I.C.C. § 95.975(a) (2) (ii)] the carrier had a duty to move out each car within twenty-four hours after it was received. If it had done so, no demurrage would have been incurred, and, the shippers contend, since all cars were shipped on the same bill of lading, they would have and should have been accorded the battery rate, regardless of whether or not they were received within one day. Plaintiff carrier contends that in order to enjoy the battery rate, the cars must be received within one day or held until the entire battery is received, and that demurrage must be charged on the cars so held.

Resolution of the issue depends on the construction of Items 145 and 180 of TCFB Tariffs 1-M, 1-N, and 1-O, the pertinent portion of which reads:

"When a number of different articles * * * in volume equivalent to two or more carload shipments are tendered to carrier at Memphis, Tennessee * * * or St. Louis, Missouri and loaded at carrier's freight house or freight house facilities leased from a carrier in one day under one bill of lading * * * for each carload or under one bill of lading * * * for the entire quantity by one consignor to one consignee at one destination via one route, * * *."

the battery rate may be applied. Plaintiff argues that the phrase "in one day" modifies "under one bill of lading for each carload or under one bill of lading for the entire quantity" and that the battery must be tendered and loaded in one day regardless of the type of bill of lading under which it travels in order for the battery rate to apply. Defendants maintain that the phrase "in one day" modifies "under one bill of lading for each carload" but not "under one bill of lading for the entire quantity", because this latter phrase is separated from the former by the word "or" which they describe as "disjunctive".

Webster's New International Dictionary (2d Ed.) defines "or" as "a coordinating particle that marks an alternative; as, you may read *or* may write, that is, you may do one of the things at your pleasure but not both. It often connects a series of words or propositions, presenting a choice of either; * * *." The same source defines "disjunctive" as "designating a conjunction, such as *either, or, neither, nor, but, although,* which denotes an alternative contrast or opposition between the ideas it connects."

If defendants' interpretation were adopted, it would permit a shipper to ship an unlimited number of cars tendered during an unlimited period under a single bill of lading and enjoy the battery rate. For example, a shipper might tender and send one hundred cars over a period of six months and receive the battery rate on them so long as all one hundred were sent from the same consignor to the same consignee under the same bill of lading. This interpretation would

**64**

clearly render the entire concept of a "battery rate" meaningless.

█ It is clear that in the instant case the "or" presents alternatives, i. e., the alternative methods for shipping, which are "under one bill of lading for each carload" and "under one bill of lading for the entire quantity." These phrases have parallel structure and there is not so much as a comma which indicates that the different bills of lading would give rise to differences in treatment of shipment, much less a delineation of those supposed differences. The plain meaning of the Items is that the "or" separates alternative methods of drawing bills of lading and that the shipments must be "tendered * * * and loaded * * * in one day * * * by one consignor to one consignee via one route," regardless of which type of bill of lading is used. Any other interpretation is tortured and makes the provisions of these Items patently incomplete.

█ Because the battery rate is substantially lower than the per-carload rate, shippers will find it cheaper to ship by permitting the carrier to detain cars until an entire battery is received, obtain the battery rate, and pay demurrage on the detained cars, than to instruct the carrier to ship cars as they are received and pay a per-carload rate. There is no question that plaintiff may detain cars until the entire battery is received, but if it does so, it must, under the Regulations, as we read them, charge demurrage for this service.

The parties have stipulated that "if plaintiff, under the terms of the applicable tariff and in order to give defendant the benefit of the battery rate, was required to hold the cars for the amount of time it actually did, then plaintiff is entitled to judgment for the prayer on both counts of its amended complaint."

It is concluded that in order to obtain the battery rate on a shipment of two or more cars, the cars must be tendered in the same day, and it follows that in order to give defendants the battery rate, plaintiff was compelled to detain cars until the entire battery was delivered. Therefore, plaintiff is entitled to awards of damages as requested.

On Count I, plaintiff is entitled to judgment against defendants Furniture Forwarders of St. Louis, Inc., and Chromcraft, Inc., in the sum of Five Thousand Seven Hundred Twenty-three Dollars ($5,723.00) and its costs.

On Count II, plaintiff is entitled to judgment against defendants Furniture Forwarders of St. Louis, Inc., and Alsco, Inc., in the sum of Four Thousand Two Hundred Sixty-seven Dollars and Fifty Cents ($4,267.50) and its costs.